IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. DE LOS ANGELES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

REYNALDO A. DE LOS ANGELES, APPELLANT.

Filed May 7, 2024.    No. A-23-577.

Appeal from the District Court for Buffalo County: RYAN C. CARSON, Judge, on appeal thereto from the County Court for Buffalo County: GERALD R. JORGENSEN, JR., Judge. Judgment of District Court affirmed.

Jerrod Jaeger, of Jaeger Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Reynaldo De Los Angeles appeals from the order of the Buffalo County District Court affirming his county court jury conviction and sentence for third degree sexual assault. He argues that the county court committed various evidentiary errors, that the State committed prosecutorial misconduct, that the evidence was insufficient to sustain the guilty verdict, that his sentence was excessive, and that he received ineffective assistance of counsel. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

On September 2, 2021, the State charged De Los Angeles in the county court of Buffalo County with third degree sexual assault, a Class I Misdemeanor. See Neb. Rev. Stat. § 28-320

- 1 -

(Reissue 2016). The complaint alleged that De Los Angeles subjected the victim, A.S., to sexual contact without her consent on August 25, 2021. De Los Angeles was a certified psychiatrist and addiction specialist who has practiced in the Kearney area since 1991. A.S. was one of his patients.

1. FIRST § 27-414 MOTION AND HEARING

In November 2021, the State filed a notice of intent to offer testimony from C.E. regarding similar sexual crimes committed by De Los Angeles pursuant to Neb. Rev. Stat. § 27-414 (Reissue 2016). At the hearing thereon, the State called Kearney Police Department Investigator Cody Bolte; A.S., the current victim; and C.E., an alleged prior victim.

During the hearing, Investigator Bolte testified that during the course of his investigation into the alleged sexual assault of A.S., he received a report of another assault by De Los Angeles. Investigator Bolte testified that C.E., who was identified as the reporting party, agreed to speak with law enforcement.

C.E. testified that she had previously been De Los Angeles' patient and that in 1998 or 1999, when she was 18 or 19 years old, De Los Angeles assaulted her after she expressed that she wanted to terminate his services. She explained that De Los Angeles often asked her personal questions and commented on her appearance. According to C.E., she had an appointment with De Los Angeles in July 1999 to discuss discontinuing her antidepressant medication. During this appointment, she and De Los Angeles were the only people in the building. C.E. testified that, during this appointment, De Los Angeles kissed her, pushed her up against his desk, and groped her buttocks and her breasts over her clothing. C.E. informed Investigator Bolte that she reported the assault to law enforcement when it occurred, but De Los Angeles was never charged or prosecuted. Investigator Bolte corroborated C.E.'s report through the attorney that represented C.E. following the incident. Investigator Bolte stated that he believed that C.E.'s report was investigated by the Nebraska Department of Health and Human Services (DHHS).

Following the hearing, the county court granted the State's motion to present evidence at trial of C.E.'s allegations of sexual assault because of the similarities of C.E.'s allegations to the allegations made by the current victim even though De Los Angeles was never formally charged in connection with C.E.'s allegations. More specifically, the court stated on the record:

Interesting that on the one hand you say they're not that similar, but on the other hand you're saying she wrote or read a report and then had the same report, which it seems to me is very similar. Yeah, I think . . . by clear and convincing evidence it's clearly probative of the incident involved here. It's not unduly prejudicial. The difference in [C.E.'s] testimony from the victim's . . . can be covered with a jury instruction.

I do find it significant that the proximity in time may be [a] problem if [the prior alleged incident had] never had been reported and all of a sudden she's bringing it up now. But the fact that it was reported at the time and many people, as [C.E.] indicated, looked at the allegations, studied the allegations, she was under some amount of scrutiny and she [is still] maintaining a story at that time, I don't think proximity is a problem whatsoever. Now, in discovery you may find that something about her report is different than what she's testifying to. And if that's true, that would be before trial and you could bring that up just to show that it isn't similar or her stating to other people it was mildly different.

But for the purposes here today and from the evidence I've heard, the Court does find [it is] proper evidence to be used at trial and the State will be allowed at this point, barring anything else, to call [C.E.] as a witness for this trial.

## 2. SECOND § 27-414 MOTION AND HEARING

The State filed a second motion to offer § 27-414 evidence from R.S., who was another alleged victim. At the second hearing, the State offered the testimony of Investigator Bolte and R.S. Investigator Bolte testified that law enforcement received information from R.S. regarding a second possible sexual assault involving De Los Angeles. R.S. reported that in 1991, De Los Angeles touched her inappropriately when she worked with him at Richard Young Hospital. According to R.S., at that time, De Los Angeles, who was approximately 50 years old, was the primary psychiatrist in the chemical dependency unit and she was a 30-year-old registered nurse. R.S. testified that she agreed to show De Los Angeles around because he was new to town. During the tour, De Los Angeles wanted to make a brief stop at his hotel room to change his clothes and insisted that R.S. accompany him.

While in the hotel room, R.S. testified that De Los Angeles offered her a glass of wine, which she accepted, and he turned on a movie. She recalled being very uncomfortable and indicated several times that she wanted to leave. At some point, De Los Angeles, wearing only underwear, sat down next to her on the bed. R.S. claimed that she could not recall a number of the details, but that De Los Angeles placed her hand on his groin over his underwear, and touched her leg, breasts, and vagina, both over and under her clothes. She told him to stop and that she did not want to continue. R.S. could not recall if they had sexual intercourse and testified that she did not remember the rest of the night and did not remember getting home. She further stated that following the incident, De Los Angeles created a hostile work environment. Although R.S. reported the incident to management, no action was taken. R.S. testified that she reported the alleged assault to her counselor and a friend and that she kept a journal at the time in which she referenced the alleged assault.

Following the hearing, the district court found that R.S.' testimony and her circumstances were admissible and relevant under § 27-414. The court stated that

according to [R.S.'] testimony . . ., the circumstances were not a "date" whatsoever, and that she did not consent to the sexual contact perpetrated by [De Los Angeles.] The Court finds that the circumstances are in fact, similar to the current charges insomuch as they involve a wide disparity in the relative "power" of the individuals involved. The charges for which [De Los Angeles] is accused and the events of the previous allowed witness under 27-414 both involve patients of [De Los Angeles]; the 1991 incident, while not involving a patient, involves an employee who was subordinate to [De Los Angeles'] status as one, if not the only, treating psychiatrist at the hospital where they both worked.

## 3. DISCOVERY/MOTION TO SUPPRESS

In July 2022, De Los Angeles filed a motion for additional discovery or, in the alternative, a motion in limine, in which he requested that the court enter an order requiring that the State turn

over the entirety of R.S.' journal or find the journal inadmissible. The county court noted that it had reviewed two of R.S.' journals and determined that there was "no relevant evidence in the journals other than [one single page of R.S.' journal which was] previously offered and received."

## 4. TRIAL

A jury trial was held over 3 days in August 2022. Testimony was adduced from A.S.; Amy Martin, a pharmacy technician; Crystle McCarty, a pharmacist; the victim's mother; Investigator Bolte; Investigator Jeff Schwarz; C.E. and R.S., the alleged prior victims; Betty Johnson, a friend of R.S.; and De Los Angeles.

Investigator Schwartz testified that he took A.S.' initial report on August 25, 2021. Investigator Schwarz conducted a follow-up investigation including obtaining statements from Martin and McCarty and identifying and interviewing R.S. after she came forward to report her alleged assault.

Investigator Bolte testified that he assisted in the investigation of De Los Angeles following A.S.' allegation of sexual assault that occurred on August 25, 2021. He testified that A.S. reported that she had been assaulted by De Los Angeles during an appointment at his office. Following the victim's report, Investigator Bolte testified that he set up a forensic interview of the victim. During the interview, the victim reported that she had been seeing De Los Angeles for psychiatric services on and off for several years, with the most recent services having restarted in 2016.

A.S. testified that on August 25, 2021, she had an appointment with De Los Angeles to correct a prescription she had received previously. At one point during the appointment, De Los Angeles tried to give A.S. a hug, began rubbing her back, tried to kiss her, put his hand up her shirt and touched her breasts over her bra, and then put his hand down her pants and touched her buttocks. A.S. testified that she left De Los Angeles' office and reported the incident to a pharmacy employee, her mother, and then to law enforcement. A.S. also reported that during previous sessions, De Los Angeles inappropriately commented about her clothes, told her he liked the shape of her body, and inquired about her sex life.

After reviewing the forensic interview and speaking with the victim, Investigator Bolte interviewed De Los Angeles at the psychiatry office. De Los Angeles agreed to speak to Investigator Bolte after being informed that A.S. had made allegations of inappropriate behavior by De Los Angeles. This interview was captured on Investigator Bolte's body camera. Investigator Bolte testified that during the interview, De Los Angeles admitted that A.S. had been his patient for the past 3 years, that he had known A.S. for about 15 years, and that he typically had one session per week with A.S. De Los Angeles also informed Investigator Bolte that he had prescribed medications for A.S. including one for methadone, due to her addiction to controlled substances, and that his last appointment with A.S. had occurred on August 25, 2021. Investigator Bolte testified that during the interview, De Los Angeles stated that it was not uncommon for him to hug patients during sessions and admitted to making inappropriate statements about A.S.' weight. When asked whether De Los Angeles put his hand under A.S.' shirt, he responded, "I'm not sure. I don't know if I'd ever gotten to that point." Investigator Bolte asked De Los Angeles whether he had asked A.S. to sit on his lap and De Los Angeles responded that "She was basically trying to maintain her balance and I fell down as well. And so when I fell down, she fell down on me." Investigator Bolte testified that De Los Angeles' explanation for rubbing A.S.' leg was that she

had indicated a problem with her skin in that area. Finally, Investigator Bolte indicated that in response to a question about whether he used his hand to rub her back or put his hand down A.S.' pants, De Los Angeles responded, "I don't think so," and, "I don't think anything of that nature happened."

Thereafter, Investigator Bolte conducted a search of De Los Angeles' office pursuant to a search warrant for A.S.' medical records and for security footage from the building. Law enforcement seized certain patient records, a computer, two cameras, and a cellphone. De Los Angeles was subsequently arrested at his office pursuant to an arrest warrant.

During the trial, the State elicited testimony from C.E. and R.S., who testified to alleged incidents involving De Los Angeles, along with testimony from Martin, McCarty, and Johnson, who provided corroborating evidence regarding reports or demeanor involving the victims.

De Los Angeles testified that A.S. initiated physical contact during the August 25, 2021, appointment and tried to hug him. He described A.S. as having difficulty focusing and that, at one point, A.S. tripped and fell into his lap. He testified that A.S. owed him a significant sum in unpaid expenses and suggested blackmail in his progress notes. He denied touching A.S.' breasts or buttocks.

The jury found De Los Angeles guilty of third degree sexual assault.

5. SENTENCING HEARING

During the sentencing hearing, the county court acknowledged that it had received and reviewed the presentence investigation report (PSR). Defense counsel made several objections to reports and information contained within the PSR, including references to disciplinary information from DHHS regarding the suspension of De Los Angeles' medical license; police reports of other alleged sexual offenses from individuals who did not testify at trial and were not part of the § 27-414 hearing; additional evidence related to C.E.'s and R.S.' cases; other DHHS and police reports; criminal history information; administrative findings; reporting requirements; and complaints regarding allegations related to using, storing, or prescribing medications.

The State argued that the information contained within the PSR was relevant because it was either evidence submitted during the trial or it was part of the initial investigation into the allegations in the case. After hearing the parties' arguments, the county court did not strike any of the information objected to by defense counsel but stated that most of evidence referenced in counsel's objections was not considered by the court as relevant for purposes of determining De Los Angeles' sentence.

In sentencing De Los Angeles, the court specifically found that

the fact, based on his maintaining his innocence, which is . . . his [right] to do, it still leads to not taking responsibility or acknowledging any of this, and therefore, probation is not appropriate, . . . even the evaluator . . . said it casts doubt on any counseling services being viable due to the fact of his current position . . .

The simple fact is . . . you can line up a lot of people you've helped over the years, I don't doubt that's true. Nobody is completely really bad or otherwise. I'm sure you've done a lot of good things. These events, however, . . . are very egregious. You were in a position of trust with these people, you were in a position to help them, and you took advantage of them. I found the evidence completely compelling during the trial; from

[A.S.] alone. Her evidence plus the investigators[' evidence] plus your testimony, I have no question of your guilt in this matter. Then we have other evidence to indicate, from other people, that this has happened before. And, you know, I think most people are shocked in these situations. I think history's replete with individuals who are seemingly upstanding, fine members of society, and then something like this comes out and everybody . . . can't believe it. It happens. And you're one of those individuals as far as I'm concerned. So I'm not saying you haven't done great things. And I'm sure there could be hundreds if not thousands of people who could give testimonials as to how you've helped them. Unfortunately, you did not help these people. . . . I think the Court understands the injuries that happen with these kind[s] of things. And a sentence has to be tailored to demonstrate how egregious this is. And the fact is this Court cannot depreciate the seriousness of this.

The county court sentenced De Los Angeles to 364 days in jail with credit for one day already served and ordered him to register as a sex offender for 15 years.

### 6. DISTRICT COURT APPEAL

De Los Angeles timely filed a notice of appeal to the Buffalo County District Court and was represented by new counsel. De Los Angeles' statement of errors alleged that the county court erred in:

1. admitting evidence of other sexual assaults under § 27-414;
2. not imposing the rules of evidence during the § 27-414 hearings;
3. permitting the State to allege that, but for venue and statute of limitations problems, De Los Angeles would have been charged with the other sexual assaults;
4. allowing the State to improperly impeach him regarding the suspension of De Los Angeles' medical license and by presenting Exhibit #24 and offering that exhibit in the jury's presence;
5. failing to give his requested jury instruction;
6. admitting exhibit 3 containing R.S.' diary entry into evidence;
7. allowing the following hearsay and improper bolstering testimony and depriving De Los Angeles of his right to confrontation:
    a. Investigator Bolte's testimony regarding statements made to him by R.S., Betty Johnson, and C.E.;
    b. R.S.' testimony regarding statements made by an unnamed therapist;
    c. Investigator Schwarz' testimony regarding statements made to him by R.S.;
    d. Martin's testimony regarding statements made to her by A.S.;
    e. McCarty's testimony regarding statements made to her by A.S.;
    f. the victim's mother's testimony regarding statements made to her by A.S.;
8. excluding biased and prejudicial evidence regarding C.E.'s demand for money in exchange for silence;
9. receiving victim impact statements from persons other than the victim in this case;
10. imposing an excessive sentence;
11. finding that the evidence supported his conviction;
12. allowing the State to make improper arguments at sentencing;

13. denying De Los Angeles a fair trial and right to counsel due to the ineffective assistance of counsel based upon trial counsel's failure to:

a. inform De Los Angeles of certain evidence against him;

b. insist on the rules of evidence being enforced at the 414 hearings;

c. object to improper statements by the State during opening statements and closing arguments;

d. investigate the State's witnesses for bias and motive to fabricate testimony;

e. call witnesses who would have corroborated De Los Angeles' description of events;

f. object to evidence and testimony constituting hearsay, bolstering, and in violation of De Los Angeles' right to confrontation; and

g. move for recusal of the sentencing judge on the basis of improperly received documents which were made a part of the PSR.

The district court rejected De Los Angeles' assigned errors and affirmed De Los Angeles' conviction and sentence. Specifically, the district court found that the county court applied the rules of evidence during the § 27-414 hearings and properly admitted into evidence the § 27-414 evidence of other sexual offenses and R.S.' diary entries. The district court further found that the county court did not err in finding that: the testimony of certain witnesses fell under a hearsay exception and did not violate De Los Angeles' right to confrontation; De Los Angeles' claims of prosecutorial misconduct were waived and, even if they were considered, the evidence showed no such misconduct occurred; the evidence was sufficient to support his conviction; the sentence imposed was not excessive; and the claims of ineffective assistance of counsel either relied on alleged errors which the court had considered and determined that no error occurred or that his assignments were broad and without specific citations to the record.

De Los Angeles now appeals from the district court's order affirming his county court conviction and sentence.

### III. ASSIGNMENTS OF ERROR

De Los Angeles' assignments of error mimic his statement of errors filed in the district court and can be broken down into four categories: (1) evidentiary rulings; (2) claims of prosecutorial misconduct; (3) court errors; and (4) ineffective assistance of counsel claims.

As to evidentiary rulings, De Los Angeles assigns that the district court erred in failing to find that the county court erred in: (a) admitting evidence of other sexual assaults under § 27-414; (b) not imposing the rules of evidence during the § 27-414 hearings; (c) allowing exhibit 3, containing R.S.' diary entry, into evidence; and (d) admitting improper hearsay and bolstering testimony from various witnesses and denying De Los Angeles' right to confrontation.

As it relates to his claims of prosecutorial misconduct, De Los Angeles assigns that the district court erred in failing to find that the county court erred in (a) permitting the State to allege that, but for venue and statute of limitations problems, De Los Angeles would have been criminally charged for the other sexual assaults; (b) allowing the State to engage in improper impeachment regarding De Los Angeles' license suspension and by presenting and offering into evidence exhibit 24 in the jury's presence; and (c) allowing the State to make improper arguments at sentencing.

As to his assignments of court error, De Los Angeles assigns that the district court erred in failing to find that the county court erred in determining that the evidence was sufficient to support his conviction and that the county court imposed an excessive sentence.

Finally, De Los Angeles assigns that the district court erred in failing to find that he received ineffective assistance of counsel due to trial counsel's failure to: (a) inform him of certain evidence against him; (b) insist on the rules of evidence being enforced at the § 27-414 hearings; (c) object to improper statements by the State in its opening and closing arguments; (d) investigate the State's witnesses for bias and motive to fabricate testimony; (e) call witnesses who would have corroborated De Los Angeles' description of events; (f) object to evidence and testimony constituting hearsay and bolstering in violation of his right to confrontation; and (g) move for recusal of the sentencing judge on the basis of the court's improper receipt of documents made part of the PSR.

## IV. STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020). When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court. *Id.*

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Id.*

An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and reviews the underlying factual determinations for clear error. *State v. Montoya, supra.*

When considering a claim of prosecutorial misconduct, an appellate court first considers whether the prosecutor's acts constitute misconduct. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). If the appellate court concludes that a prosecutor's acts were misconduct, then it next considers whether the misconduct prejudiced the defendant's right to a fair trial. *Id.*

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *Id.* The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022).

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). When a defendant's trial counsel is different from his or her counsel

on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id.* Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.*

## V. ANALYSIS

### 1. ALLEGED ERRORS REGARDING EVIDENTIARY RULINGS

#### (a) Evidence of Prior Sexual Offenses

De Los Angeles first assigns that the district court erred in admitting evidence of other sexual assaults under § 27-414. He argues that the district court improperly balanced the probative value of the evidence against the danger of unfair prejudice when it admitted two other instances of sexual assault.

Pursuant to § 27-414, evidence of the accused's prior commission of another offense of sexual assault is admissible if there is clear and convincing evidence that the accused committed the other offense. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). Section § 27-414 specifically provides:

(1) In a criminal case in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense or offenses of sexual assault is admissible if there is clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the accused committed the other offense or offenses. If admissible, such evidence may be considered for its bearing on any matter to which it is relevant.

(2) In a case in which the prosecution intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the accused, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause.

(3) Before admitting evidence of the accused's commission of another offense or offenses of sexual assault under this section, the court shall conduct a hearing outside the presence of any jury. At the hearing, the rules of evidence shall apply and the court shall apply a section 27-403 balancing and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged.

(4) This section shall not be construed to limit the admission or consideration of evidence under any other section of the Nebraska Evidence Rules.

Here, the State sought to present evidence of other offenses of sexual assault allegedly committed by De Los Angeles via testimony of (1) the alleged 1998 or 1999 sexual assault of C.E. and (2) the alleged 1991 sexual assault of R.S. The State offered evidence during two separate pretrial hearings.

Regarding the State's first § 27-414 motion, the district court, in balancing the probative value with the prejudicial effect of admitting the evidence, found that C.E.'s report was similar to the allegations in the current case. The court stated that "[t]he difference in [C.E.'s] testimony from the victim's . . . can be covered with a jury instruction." Therefore, the court found that the evidence was proper under the statute and that the State was permitted to call C.E. as a witness during the trial.

Regarding the State's second § 27-414 motion, the court found that the evidence regarding R.S. was admissible and relevant. Although the county court's order did not specifically reference the balancing test, it discussed the similarities in the disparity of power between De Los Angeles and his alleged prior victims. The court stated:

> The charges for which [De Los Angeles] is accused and the events of the previous allowed witness under 27-414 both involve patients of [De Los Angeles]; the 1991 incident, while not involving a patient, involves an employee who was subordinate to [De Los Angeles'] status as one, if not the only, treating psychiatrist at the hospital where they both worked.

The county court found the evidence was admissible under § 27-414.

De Los Angeles argues that the county court generally erred in determining that the probative value of C.E. and R.S.' allegations of prior sexual assaults outweighed their prejudicial value. As to C.E., De Los Angeles argues that because the prior allegation was not charged, and due to the remoteness in time of the allegation, the court should have concluded that the allegation was lacking in credibility and the testimony was unfairly prejudicial to the current charge. As to R.S., he makes a similar argument and adds that the county court failed to conduct a balancing analysis as prescribed by statute.

As to De Los Angeles' first argument, there is no requirement under § 27-414 that the commission of the prior offense must have been charged. Instead, § 27-414(1) provides, in relevant part, ". . . evidence of the accused's commission of another offense or offenses of sexual assault is admissible if there is clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the accused committed the other offense or offenses." Similarly, as to De Los Angeles' argument governing the remoteness in time of the alleged prior incident, as Professor Colin Mangrum indicated in his treatise:

> Rules 414 and 415 do not include clear cut-off-time periods. The federal courts have admitted prior sexual misconduct that has occurred many years earlier, especially in cases where there exists a sufficient factual similarity to the charged acts in the case at issue, must like a Rule 404(b) analysis. Nebraska's Rule 414(3)(b) includes "proximity in time" as a relevant, but not outcome determinative criteria for admissibility.

R. Collin Mangrum, Mangrum on Nebraska Evidence 350 (2023).

Instead, the issues raised by De Los Angeles are more properly analyzed in connection with the statutory language of § 27-414(3)(b) which provides:

> (3) Before admitting evidence of the accused's commission of another offense or offenses of sexual assault under this section, the court shall conduct a hearing outside the presence of any jury. At the hearing, the rules of evidence shall apply and the court shall

- 10 -

apply a section 27-403 balancing and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (a) the probability that the other offense occurred, *(b) the proximity in time and intervening circumstances of the other offenses,* and (c) the similarity of the other acts to the crime charged.

(Emphasis supplied.)

Accordingly, the question here becomes whether the court erred in conducting the balancing analysis under § 27-403 when considering factors such as (a) the probability that the other offenses occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged. When applying those factors, De Los Angeles argues that the county court erred in finding there was clear and convincing evidence to admit this testimony. We disagree. Although we recognize the fact that the prior allegations were not formally charged and allegedly occurred many years before the current offense, we, like the county court, recognize the similarity between the charged act and the allegations in relation to the physician's position of authority and his alleged conduct. And after reviewing the testimony of the alleged prior victims in that light, along with the evidence that corroborated their reports, we cannot say that the county court erred in finding that there was clear and convincing evidence that De Los Angeles committed the prior acts or that the court erred in finding that the probative value of the evidence outweighed any prejudice to him. And as it relates to De Los Angeles' additional argument that the county court failed to conduct a balancing analysis in connection with its review of R.S.' testimony, we find that the language of the court's order is consistent with having undergone the requisite analysis. This initial assignment of error fails.

### (b) Failing to Impose Rules of Evidence at § 27-414 Hearings

De Los Angeles' next assigns that the county court erred in failing to apply the rules of evidence during the § 27-414 hearings. He argues that the "court sustained almost no objections against the State's evidence" and that the court "commented that there was no jury present, implying that he was applying a different standard."

As provided above, § 27-414(3) provides that, during the hearing, the rules of evidence shall apply. Despite De Los Angeles' argument to the contrary, during the course of the § 27-414 hearing, the county court made multiple evidentiary rulings when evidentiary objections were proffered thereby demonstrating the court's application of the rules of evidence. De Los Angeles fails to identify a particular objection or ruling; he simply makes a blanket argument that the court failed to apply the rules. The record refutes his general argument, and this assignment fails.

### (c) Admitting R.S.' Diary Entry Into Evidence

De Los Angeles next assigns that the court erred in admitting R.S.' diary entry contained in exhibit 3 into evidence. On appeal, De Los Angeles argues that exhibit 3, containing the single page of R.S.' diary entry was erroneously admitted because it lacked foundation, was not relevant, and was not the best evidence because it was a duplication of R.S.' testimony.

The general rule is that when the district court acts as an appellate court, only those issues properly presented to and passed upon by the district court may be presented to a higher appellate

court. *State v. Buol*, 314 Neb. 976, 994 N.W.2d 98 (2023). In such circumstances, absent plain error, an issue raised for the first time in the Supreme Court or the Court of Appeals will be disregarded inasmuch as the district court cannot commit error in resolving an issue never presented and submitted for disposition. *Id*.

Here, the diary entry admitted into evidence as exhibit 3 was also admitted into evidence as part of several pages of R.S.' diary entries as exhibit 21. And, although De Los Angeles objected to the admission of exhibit 21 at trial, because he did not assign error regarding the admission of exhibit 21 in his statements of error in his appeal to the district court, he has not preserved that issue for appellate review. Since De Los Angeles has waived any challenge to the admission of exhibit 21, which contains the exhibit 3 diary page, we find that any error relating to the admission of exhibit 3 was harmless.

(d) Error Regarding Admission of Witness Testimony

De Los Angeles next generally assigns that the county court erred in admitting testimony of multiple witnesses on the basis that such testimony constituted "hearsay and improper bolstering testimony" which deprived him "of his right to confrontation." Brief for appellant at 10. Within his argument, he relates his assignment to certain testimony from Investigator Bolte, Investigator Schwarz, Martin, McCarty, and the victim's mother, as it primarily relates to testimony corroborating victim reports of the alleged assaults.

But, as the State points out in its brief, as to this general assignment, De Los Angeles did not pose hearsay objections to the testimony given by Investigator Bolte, Investigator Schwarz, and the victim's mother, nor did he identify what specific objection, ruling, or testimony he complains of. If when inadmissible evidence is offered the party against whom such evidence is offered consents to its introduction, or fails to object, or to insist upon a ruling on an objection to the introduction of the evidence, and otherwise fails to raise the question as to its admissibility, he is considered to have waived whatever objection he may have had thereto, and the evidence is in the record for consideration the same as other evidence. *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009). See also *In re Interest of Jordana H. et al.*, 22 Neb. App. 19, 846 N.W.2d 686 (2014) (it is not duty of reviewing court to search record for purpose of ascertaining whether there is error, and any error must be specifically pointed out). As such, we will not further address the assignment as to these three witnesses.

However, because De Los Angeles posed hearsay objections to testimony by Martin and McCarty regarding A.S.' statements to them, we will address his claims regarding these 2 witnesses.

Neb. Rev. Stat. § 27-801 (Cum. Supp. 2022) defines hearsay and provides, in pertinent part:

(3) Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted; and

(4) A statement is not hearsay if:

(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement . . . (ii) is consistent with his or her testimony and is offered to rebut an express or implied charge against him or her of recent fabrication or improper influence or motive . . .

In *State v. Smith*, 241 Neb. 311, 488 N.W.2d 33 (1992), the defendant made a similar claim that the trial court erred in overruling his hearsay objections to the testimony of an officer and the victim's mother as to the report and details of the prior sexual assault. In finding that the testimony did not constitute hearsay, the Nebraska Supreme Court held as follows:

> The victim's testimony preceded that of the officer and of her mother. During the victim's cross-examination, it was implied, at least by innuendo, that the victim had falsified her story of sexual abuse. The testimony of [the officer] and of the victim's mother was relevant to the charges against the defendant and showed that the victim had made prior consistent statements. Subject to the balance found in rule 403 of the Nebraska Evidence Rules (Neb. Rev. Stat. § 27-403 (Reissue 1989)), admission of the victim's prior consistent statements was a matter within the discretion of the trial court.

*State v. Smith*, 241 Neb. at 319, 488 N.W.2d at 38. We make a similar finding in the instant case.

Here, A.S.' testimony preceded that of Martin and McCarty. During cross-examination of A.S., it was implied, at least by innuendo, that A.S. was fabricating the report. The testimony of Martin and McCarty was relevant to the charges and showed that A.S. had made prior consistent statements. We find no abuse of discretion in the county court admitting A.S.' prior consistent statements which statements were made before allegations of recent fabrication.

## 2. PROSECUTORIAL MISCONDUCT

De Los Angeles next assigns that the court erred in: (a) permitting the State to make improper remarks in its opening statements and closing arguments; (b) allowing the State to engage in improper impeachment related to the suspension of his medical license and presenting exhibit 24 while in the presence of the jury; and (c) allowing the State to make improper arguments during the sentencing hearing.

Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused. *Id.* A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *Id.* In assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. *Id.* It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial. *Id.*

### (a) Opening Statements and Closing Arguments

De Los Angeles assigns that the court erred in allowing the State to commit prosecutorial misconduct when the State alleged that "but for venue and statute of limitations problems [De Los Angeles] would have been charged with the crimes for the other sexual assaults." However, De Los Angeles did not object during or after either the State's opening statement or closing argument.

Ordinarily, a party who does not object to an argument of the prosecutor that is alleged to constitute misconduct will be held to have waived his right to complain. *State v. Navrkal*, 242 Neb. 861, 496 N.W.2d 532 (1993). The failure to make a timely objection to the closing argument of the prosecuting attorney is equivalent to failing to make any objection at all and waives any right to complain. *Id*.

Since De Los Angeles failed to object to the prosecutor's opening statement or closing argument, this assignment or error has not been preserved for our review.

(b) Prosecutorial Misconduct Through Improper
Impeachment of License Suspension

De Los Angeles next assigns that the county court erred in allowing the State to engage in prosecutorial misconduct when it improperly impeached him related to the suspension of his medical license and presented exhibit 24, a DHHS report regarding his previous licensure and disciplinary actions, in the presence of the jury. His argument relates to the court overruling his objection to improper impeachment and the State's use of the exhibit to place suspicion in the mind of the jury and the court's receipt of the exhibit in front of the jury which he argues was prejudicial. He generally argues that the prosecutor had a duty to conduct a trial in a fair and impartial manner and that the prosecutor went over the line in improperly impeaching De Los Angeles during his testimony.

During cross-examination, De Los Angeles admitted that sometime in 2011, until 2014, his medical license was placed on hold and he was required to take a sabbatical. After the State inquired as to why De Los Angeles' medical license was placed on hold, defense counsel objected and a sidebar was held off the record. Thereafter, outside the presence of the jury, the State made the following offer of proof regarding the suspension of De Los Angeles' medical license from 2012 to 2014:

> [State]: Why was your license suspended during that timeframe?
> [De Los Angeles]: It was relating to – I can't even remember. Trying very hard, you know. I really cannot remember why it was suspended.
> [State]: Okay.
> [De Los Angeles]: But I was not allowed to practice . . . at that particular time until I can set up a program whereby . . I can be reinstated.
> [State]: Was it suspended during that time because you demonstrated unprofessional conduct by failing to maintain controlled substances purchased with your DEA permit in a controlled premise, and you demonstrated unprofessional conduct by giving yourself Provigil from your office supply?
> [De Los Angeles]: I'm not aware of it.

The State then asked De Los Angeles to identify exhibit 24. After reviewing exhibit 24, De Los Angeles stated that it was the reason his license was suspended in Nebraska and multiple other states. The State pointed out that the Oklahoma Board of Medicine indefinitely suspended De Los Angeles' license for actions in Nebraska because De Los Angeles misrepresented the Nebraska investigation.

Following the offer of proof, defense counsel argued that the evidence was irrelevant, constituted improper prior bad acts, was prejudicial under § 27-403, and was not heard in a hearing outside the presence of the jury as required. The State argued that the evidence went towards credibility. After the county court found that it was impeachment evidence, defense counsel argued that it was improper impeachment because there was no hearing conducted outside the presence of the jury with proper notice to De Los Angeles with a chance to respond to the allegations. The county court then stated:

> [t]he reasons about maintaining controlled substances and himself using them, I don't think it's relevant. I don't think you can go beyond to what the felony is. However, lying about Oklahoma . . . because they're being reciprocal of Nebraska and then adding on misrepresenting the Nebraska investigation on his application, . . . that is an offense, so to speak of dishonesty. So I think that part's relevant as to his credibility. And he's acknowledged that part. So, confine it to establishing that he didn't practice, that it was an official not practice, and . . . then he can explain anything he wants after that, if you want to go there. But as far as . . . anything else, no.

Defense counsel reiterated that the evidence was improper impeachment and improper character evidence. However, the county court stated that it went towards De Los Angeles' credibility and contradicted the evidence that De Los Angeles presented that he had a 50-year career and that his license had not been suspended.

When the trial commenced in the jury's presence, the State resumed questioning and De Los Angeles acknowledged that his license had been suspended in Nebraska as well as several other states. The State then handed De Los Angeles exhibit 24 and asked whether De Los Angeles' license had been suspended in Oklahoma for misrepresenting the Nebraska investigation. De Los Angeles responded that he was unsure and that he was not aware that it happened in that way. After De Los Angeles admitted that his license had been suspended in Oklahoma based on the Nebraska investigation, the State offered exhibit 24 for purposes of the offer of proof. The court received exhibit 24 for that purpose only. Defense counsel did not object to the offer or receipt of exhibit 24 for the offer of proof during the trial.

De Los Angeles does not assign as error that the county court erred in relation to a specific objection to this line of questioning and as stated above, counsel did not interpose an objection to the limited offer of exhibit 24. Instead, De Los Angeles assigns this error as an act of prosecutorial misconduct. As it relates to that assignment, he sums up his argument as follows:

> After not really getting an answer to its series of questions about the misrepresentation, the State then offered the exhibit that the prosecutor had been holding for the offer of proof. . . . The performance would have clearly placed suspicion in the minds of the jurors and lent credibility to it because it was received. The jurors would not have known the distinction between an exhibit received and one only received in conjunction with an offer of proof. Consequently, the receipt of the exhibit, albeit only for the offer of proof, in front of the jury was prejudicial.

Brief for appellant at 41.

We are unsure of what statement De Los Angeles is assigning as prosecutorial misconduct governing this line of questioning. He does appear to ultimately focus on the proffer of exhibit 24, but as mentioned above, De Los Angeles failed to object on the grounds of prosecutorial conduct or any other bases. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017). Because De Los Angeles failed to object to the admission of exhibit 24 or prosecutorial misconduct in connection with the line of questioning, he has not properly preserved that issue for appellate review.

(c) Alleged Prosecutorial Misconduct During Sentencing Hearing

De Los Angeles next assigns that the county court erred in allowing the State to commit prosecutorial misconduct when the State made improper arguments during the sentencing hearing. He argues that the State submitted evidence of other sexual assault allegations which deprived him of due process and led to an unjust result. De Los Angeles generally argues that the State improperly offered police reports and DHHS reports from another victim who came forward while the case was pending which were contained in the PSR.

Neb. Rev. Stat. § 29-2261 (Cum. Supp. 2022), which governs the contents of presentence investigation reports, provides in relevant part:

> (3) The presentence investigation and report shall include, when available, an analysis of the circumstances attending the commission of the crime, the offender's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation, and personal habits, and any other matters that the probation officer deems relevant or the court directs to be included. All local and state police agencies and Department of Correctional Services adult correctional facilities shall furnish to the probation officer copies of such criminal records, in any such case referred to the probation officer by the court of proper jurisdiction, as the probation officer shall require without cost to the court or the probation officer.

During the sentencing hearing, defense counsel made several objections to information contained in the PSR including the reference to a police report by an additional victim alleging that she had been sexually assaulted by De Los Angeles. The county court found it had wide latitude to consider a variety of information for the purpose of sentencing, that certain disciplinary matters concerned De Los Angeles' history and were relevant, and that the court did not read the reports of the other alleged victims that had come forward. The court stated:

> I'm not going to specifically strike anything, but I think I've addressed most of the things, if not all, that you brought up, and made clear that most of the things you referred to [that] I didn't even read or look at. So, in that sense, they aren't particularly relevant to this particular sentence.

De Los Angeles captions his argument "*The court erred in allowing the State to make improper argument at sentencing.*" Brief for appellant at 41. (Emphasis in original.) But his argument provides that: "[t]he State submitted evidence of other sexual assault allegations in the sentencing phase of the case. (PSR Addendum October 27, 2022). This deprived [De Los Angeles] of due process and led to an unjust result." *Id*. As it relates to the caption, the record indicates that

- 16 -

the State made no comment at sentencing with regard to the addendum to the PSR. And as it relates to the addendum being included as part of the PSR, the court specifically indicated that it did not read or look at it. As such, regardless of whether the report could be included or considered as part of the PSR, it was not argued or considered here and we reject De Los Angeles' claim that this resulted in a denial of due process or created an unjust result.

### 3. ALLEGED ERRORS BY COUNTY COURT

De Los Angeles next assigns that the county court erred in: (a) finding that the evidence supported his conviction; and (b) imposing an excessive sentence.

### (a) Sufficiency of Evidence

De Los Angeles assigns that the court erred in finding that the evidence was sufficient to support his conviction. He argues that "[t]his error relies on determinations of other errors claimed in this brief. [De Los Angeles] only relies on this claim to the extent it would apply if this Court finds that certain evidence was admitted erroneously." Brief for appellant at 41.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024).

Here, De Los Angeles was convicted of third degree sexual assault under § 28-320 which provides:

> (1) Any person who subjects another person to sexual contact (a) without consent of the victim, or (b) who knew or should have known that the victim was physically or mentally incapable of resisting or appraising the nature of his or her conduct is guilty of sexual assault in either the second degree or third degree.
>
> . . . .
>
> (3) Sexual assault shall be in the third degree and is a Class I misdemeanor if the actor shall not have caused serious personal injury to the victim.

The evidence adduced during the trial, viewed in the light most favorable to the State, established that on August 25, 2021, A.S. went to De Los Angeles' psychiatry office for an appointment concerning an issue with her medication. When A.S. attempted to leave the office, De Los Angeles pulled her in for a hug and attempted to kiss her. He then put his hand under A.S.' shirt and touched her right breast and stuck his hand down the back of her pants. A.S. did not consent to the contact. This evidence was sufficient to support De Los Angeles' conviction for third degree sexual assault. This assignment fails.

### (b) Excessive Sentence

De Los Angeles also contends that the county court abused its discretion in imposing an excessive sentence.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

Here, De Los Angeles was convicted of third degree sexual assault, a Class I Misdemeanor. See § 28-320. His sentence of 364 days' imprisonment is within the statutory sentencing range for Class I misdemeanors which are punishable by a minimum of no imprisonment and a maximum of not more than 1 year of imprisonment and/or a $1,000 fine. See Neb. Rev. Stat. § 28-106 (Reissue 2016).

At the time of sentencing, De Los Angeles was 77 years old, single, and had no dependents. De Los Angeles was self-employed as a psychiatrist. His criminal history included a conviction for willful failure to collect/pay over tax, for which he was sentenced to probation and which he successfully completed. Although the district court did not specifically address each of the sentencing factors, the court specially stated that it had considered the information contained in the PSR, the nature of the crime, the likelihood that community resources would be unsuccessful, De Los Angeles' failure to take responsibility for his actions, and the egregiousness of the offense. We cannot find that the court erred in considering or weighing the sentencing factors. This assignment fails.

### 4. Ineffective Assistance of Trial Counsel

De Los Angeles' final assignments of error relate to his claims of ineffective assistance of trial counsel. Specifically, he contends that his trial counsel was ineffective in failing to: (a) inform him of certain evidence against him; (b) insist that the rules of evidence be followed during the § 27-414 hearings; (c) object to improper statements by the State during its opening statements and closing arguments; (d) investigate the State's witnesses for bias and motive to fabricate testimony; (e) call witnesses who would have corroborated his description of events; (f) object to evidence and testimony constituting hearsay, bolstering, and in violation of his right to confrontation; and (g) move for recusal of the sentencing judge on the basis that the court improperly received documents that were made part of the PSR.

In *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020), the Nebraska Supreme Court stated that

> In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.
>
> When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Once raised,

the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims.

In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

### (a) Failure to Inform of Evidence Causing Surprise

De Los Angeles assigns that his trial counsel was ineffective in "fail[ing] to inform [him] of certain evidence against him." Brief for appellant at 11. He argues that evidence was presented during his cross-examination which defense counsel failed to disclose to him. He contends that, because he was "surprised by the evidence, his answers made him appear evasive." Brief for appellant at 47.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to determine whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024).

Here, because De Los Angeles fails to identify the evidence that he claims his counsel failed to disclose to him, a district court later reviewing a petition for postconviction would not be able to recognize whether his claim had been brought during his direct appeal. Accordingly, De Los Angeles' claim does not meet the particularity requirement for claims of ineffective assistance of counsel on direct appeal and is not preserved.

### (b) Rules of Evidence During 414 Hearings

De Los Angeles' next contends that his trial counsel was ineffective for "fail[ing] to insist on the rules of evidence being enforced at the 404 hearings." Brief for appellant at 11. He argues that the county court "clearly did not enforce the rules of evidence" and "[a]s a result, evidence, which should have been excluded, was admitted for determination of whether certain 414 evidence should be admitted at trial." Brief for appellant at 48.

As we found above, the county court admitted § 27-414 evidence over defense counsel's objections. De Los Angeles does not separately assign error to the county court's rulings on those objections. It does not follow that because the county court overruled De Los Angeles' objections that it did not apply the rules of evidence. Having found above that the record refuted De Los Angeles' claim that the rules of evidence were not followed during the § 27-414 hearings, we find that trial counsel cannot be ineffective in failing to insist on applying the rules of evidence during the hearings.

(c) Failure to Object to State's Opening
Statements and Closing Arguments

De Los Angeles assigns that trial counsel was ineffective in failing to object to improper statements by the State during opening statements and closing arguments. However, in his brief, De Los Angeles argues that "it was error for trial counsel to fail to object and move for a mistrial" when the State stated that he "would have been charged with other assaults but for venue and statute of limitations problems" and that, [a]s it was, the State implied the existence of sufficient evidence of guilt, as determined by the prosecutor, to bring assault charges. Brief for appellant at 48. We find that the record on direct appeal is sufficient to resolve this claim.

The Nebraska Supreme Court recently stated:

> Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. In assessing allegations of prosecutorial misconduct, a court first determines whether the prosecutor's remarks were improper. It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial.

> Prosecutorial misconduct prejudices a defendant's right to a fair trial when the misconduct so infected the trial that the resulting conviction violates due process. Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole. In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, we consider the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury, (2) whether the conduct or remarks were extensive or isolated, (3) whether trial counsel invited the remarks, (4) whether the court provided a curative instruction, and (5) the strength of the evidence supporting the conviction. A prosecutor's conduct that does not mislead and unduly influence the jury is not misconduct.

*State v. Garcia*, 315 Neb. 74, 158-59, 994 N.W.2d 610, 681 (2023).

In *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016), the Nebraska Supreme Court considered whether a prosecutor's statements during closing arguments that the defendant lied and that defense counsel's theories were "science fiction" did not amount to prosecutorial misconduct. The Court stated:

> Public prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial. While a prosecutor should prosecute with "earnestness and vigor" and "may strike hard blows, he is not at liberty to strike foul ones."

> [The defendant] points out that according to the American Bar Association, "[t]he prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant," and that the Nebraska Rules of Professional Conduct state that a lawyer shall not, in trial, "state a personal opinion as to . . . the credibility of a witness . . . or the guilt or innocence of an accused." But we have explained that when a prosecutor's comments rest on reasonably drawn inferences from

the evidence, the prosecutor is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense. Thus, in cases where the prosecutor comments on the theory of defense, the defendant's veracity, or the defendant's guilt, the prosecutor crosses the line into misconduct only if the prosecutor's comments are expressions of the prosecutor's personal beliefs rather than a summation of the evidence.

The principle behind the prohibition of expressing personal opinions on the defendant's veracity and guilt is that when a prosecutor asserts his or her personal opinions, the jury might be persuaded by a perception that counsel's opinions are correct because of his position as prosecutor, rather than being persuaded by the evidence. The prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own view of the evidence. Moreover, the jury is aware that the prosecutor has prepared and presented the case and consequently may have access to matters not in evidence; thus, the jury may infer that such matter precipitated the prosecutor's personal opinion.

*State v. Gonzales*, 294 Neb. at 645-46, 884 N.W.2d at 117-18.

De Los Angeles takes issue with the prosecutor's comment during opening statements that "[t]here aren't separate charges for these women, based on the fact that one of those incidents happened in Hall County and the fact that [R.S.'] sexual assault happened prior to [the] statute of limitations being able to [be] imposed here." He likewise takes issue with statements made by the prosecutor during closing arguments:

So, apparently you're not supposed to believe [C.E.] because Hall County didn't prosecute. So, apparently that agency didn't think that they had enough evidence to proceed back in 1999. That has no bearing on whether or not that happened. . . . We talked about people being victims of sexual assault. Their cases haven't been prosecuted. They didn't want to report those. They didn't come forward. That doesn't mean they're not true. The fact is that [C.E.] did try to come forward. She's not responsible if another agency decided not to go forward with her case. . . .

Let's talk about [R.S.] . . . She didn't want to report initially . . . She told some people about it. . . . went to HR. Got swept under the rug. Nothing happened. . . . She didn't report to law enforcement. She said she didn't want to go through it at that point. . . .

As we read De Los Angeles' argument, he takes issue with the one sentence in the prosecutor's opening statement referencing to the statute of limitations and the incident occurring in another county. However, based on our review of the record, that statement was isolated, was a small part of the trial as a whole, and was not repeated during the course of the trial or during closing arguments. Instead, during closing arguments, the prosecutor simply informed the jury that a prior failure to charge the incidents did not mean that the incidents did not occur. We do not find that argument to be misleading or result in undue influence on the jury. And because we do not find the single sentence during the prosecutor's opening statement was sufficient to mislead or unduly influence the jury, we find no prosecutorial misconduct in the prosecutor's remarks during opening statements and closing arguments. Since, as a matter of law, counsel cannot be ineffective

for failing to raise a meritless argument, we find that the district court did not err in finding that trial counsel was not ineffective in failing to object and move for a mistrial based upon the aforementioned remarks by the prosecutor. See *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018).

### (d) Failure to Investigate State's Witnesses

De Los Angeles next assigns that his trial counsel was ineffective for "fail[ing] to investigate the State's witnesses for bias and motive to fabricate testimony." Brief for appellant at 11. The entirety of De Los Angeles' argument is that defense counsel "failed to adequately investigate [the] State's witnesses. [De Los Angeles] is under the impression that no investigation was done, other than obtaining [the] State's discovery." Brief for appellant at 48.

Here, De Los Angeles has not identified which of the State's witnesses counsel should have investigated, nor has he alleged any evidence that would have been discovered with respect to an investigation. Accordingly, this claim is insufficiently stated and is not preserved. See *State v. Stelly,* 304 Neb. 33, 932 N.W.2d 857 (2019) (finding defendant failed to allege claim of deficient performance with sufficient particularity when trial counsel failed to ask questions of State's witnesses regarding chain of custody).

### (e) Failure to Call Corroborating Witnesses

De Los Angeles assigns that he received ineffective assistance of counsel due to his trial counsel's "fail[ure] to call witnesses who would have corroborated [his] description of events." Brief for appellant at 11. His argument, in its entirety, was that "[t]his trial involved the State lining up several witnesses to bolster the credibility of the primary report and 414 evidence. [His trial counsel] failed to identify and call witnesses who could have bolstered [De Los Angeles'] version of events." Brief for appellant at 48.

When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). Because De Los Angeles failed to sufficiently assign and argue this allegation of deficient performance by trial counsel, this allegation is not preserved.

### (f) Failure to Object

De Los Angeles assigns that his trial counsel was ineffective for "fail[ing] to object to evidence and testimony constituting hearsay, bolstering, and in violation of [his] right to confrontation." Brief for appellant at 11. He argues that his claim was "directly related to error claimed in Part I(4)" of his brief, that "some of the erroneously admitted testimony was admitted with no objection made" and that "[t]rial counsel's failure to object resulted in an unfair trial." Brief for appellant at 48-49. Part I(4) of De Los Angeles' brief states that testimony of A.S.' mother "included a great deal of hearsay" and that defense counsel "did not object to this questioning. This omission supports the ineffective assistance claims posed later in this brief." Brief for appellant at 38-39.

Although we are able to discern from De Los Angeles' brief that he contends that trial counsel should have posed hearsay objections to certain testimony given by A.S.' mother, he does

not identify what testimony he claims was objectionable. Accordingly, we find that this claim has not been alleged with sufficient particularity and is not preserved. See *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022) (assignment of error does not allege what specific testimony trial counsel should have objected to as inadmissible hearsay).

### (g) Failure to Move for Recusal of Sentencing Judge

De Los Angeles' final allegation of ineffective assistance of trial counsel is that trial counsel was ineffective for failing to move for recusal of the sentencing judge "on the basis of improperly received documents, made a part of the [PSR]." Brief for appellant at 11. He argues that

> [t]he State included voluminous DHHS records which were either irrelevant or violative of the requirements under 414 for prior notice of other sexual assaults. Because the information was in the hands of the sentencing judge prior to the sentencing hearing, the only remedy was recusal of the sentencing judge. Trial counsel failed to move for recusal, thereby depriving [De Los Angeles] of due process and fairness in sentencing.

Brief for appellant at 49. We find that the record is sufficient to address this claim.

A recusal motion is initially addressed to the discretion of the judge to whom the motion is directed. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). In order to demonstrate that a trial judge should have recused himself, the moving party must demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. *State v. Collins*, 283 Neb. 854, 812 N.W.2d 285 (2012). A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *Id.*

Here, De Los Angeles argues that counsel should have sought recusal of the sentencing judge on the grounds that the judge reviewed inadmissible evidence contained within the PSR. We disagree. We note that

> a sentencing court has wide latitude and discretion to impose any sentence within the statutory limits: "It is a long accepted practice in this state that before sentencing a defendant after conviction a trial judge has a broad discretion in the source and type of evidence he may use to assist him in determining the kind and extent of punishment to be imposed within the limits fixed by statute. Highly relevant, if not essential, to his determination of an appropriate sentence is the gaining of knowledge concerning defendant's life, character, and previous conduct. In gaining this information, the trial court may consider reports of probation officers, police reports, affidavits, and other information including his own observations of the defendant. A presentence investigation has nothing to do with the issue of guilt. The rules governing due process with respect to the admissibility of evidence are not the same in a presentence hearing as in a trial in which guilt or innocence is the issue. The latitude allowed a sentencing judge at a presentence hearing to determine the nature and length of punishment, other than in recidivist cases, is almost without limitation as long as it is relevant to the issue."

*State v. Hurd*, 307 Neb. 393, 399, 949 N.W.2d 339, 343 (2020).

Thus, evidence contained in a PSR is not subject to the same standards of admissibility as is present during trial and the county court's review of the evidence contained in the PSR would not make a reasonable person with knowledge of the circumstances of the case question the judge's impartiality under an objective standard of reasonableness. Accordingly, a motion to recuse on this basis would have been without merit. We further note that the court indicated that it disregarded evidence that it did not find to be relevant. Absent explicit evidence to the contrary, we presume that the court disregarded irrelevant or inappropriate information when rendering its sentence. See *State v. Dillon*, 222 Neb. 131, 382 N.W.2d 353 (1986).

For both of these reasons, a motion to recuse on the basis that the county court reviewed the evidence contained in the PSR would have been meritless. Trial counsel cannot be ineffective for failing to make a meritless argument. See *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017) (as matter of law, counsel cannot be ineffective for failing to raise meritless argument). This claim of effectiveness fails.

## VI. CONCLUSION

For the reasons stated above, we affirm the order of the district court affirming the county court's conviction and sentence.

AFFIRMED.